UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

IN RE APPLICATION OF
DEPARTMENT OF HOMELAND
SECURITY, IMMIGRATION AND
CUSTOMS ENFORCEMENT,

*Petitioner*,

vs.

SHAND, CHRISTOPHER CALMORE

*Respondent*.

_____/

**EMERGENCY PETITION FOR ENTRY OF ORDER PERMITTING
INVOLUNTARY (1) ADMINISTRATION OF NUTRIENTS & HYDRATION
AND (2) PERFORMANCE OF LABORATORY TESTS, BLOOD DRAWS,
URINALYSIS, DAILY WEIGH-INS WITH VITAL SIGNS, AND ROUTINE
<u>MEDICAL EXAMINATIONS TO MONITOR AND MANAGE HUNGER STRIKE</u>**

Petitioner, United States Department of Homeland Security, Immigration and Customs

Enforcement (ICE), files this Emergency Petition for Entry of Order Permitting Involuntary

(1) Administration of Nutrients & Hydration and (2) Performance of Laboratory Tests, Blood

Draws, Urinalysis, Daily Weigh-Ins with Vital Signs, and Routine Medical Examinations to

Monitor and Manage Hunger Strike to Respondent CHRISTOPHER CALMORE SHAND, and

states:

**I.      PARTIES, JURISDICTION & VENUE**

1.      Petitioner is the United States Department of Homeland Security, Immigration and

Customs Enforcement (ICE), an agency of the United States government.

2.      Respondent CHRISTOPHER CALMORE SHAND ("Respondent") is a non-

citizen lawfully in detention at the Krome Service Processing Center (Krome), Miami, Florida.

Respondent is in ICE custody, pending the completion of his removal proceedings under the

Immigration and Nationality Act (INA), as amended.

3.      This Court has jurisdiction of this matter under 28 U.S.C. § 1345 and 8 U.S.C. § 1329.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b).

## II.      FACTUAL BACKGROUND

5.      Respondent is a native and citizen of Jamaica. *See* **Exhibit A**, Declaration of Assistant Field Office Director Charles Parra ("Parra Decl."), ¶ 4.

6.      As of today, Respondent is on day 54 of a hunger strike and has missed over 165 meals. *See* **Exhibit B**, Declaration of Manuel E. Lopez Diaz, M.D. ("Diaz Decl."), ¶ 5.

7.      Respondent states that he is on a hunger strike to protest his continued detention. Parra Decl., ¶ 5; Diaz Decl., ¶ 5.   Respondent previously initiated a hunger strike in June 2024 and July 2024 after he refused to eat meals because of his religious dietary restrictions.   These strikes ended when he consumed food and drinks in sufficient quantity that medical personnel discontinued hunger strike protocols.   Parra Decl., ¶ 6.

8.      Since arriving at Krome on January 4, 2025, Respondent has consumed only four dinner meals, and drank two coffees and one container of plant based-nutritional supplement (330ml) at breakfast.   Diaz Decl., at ¶¶ 7; 10.   Respondent's consumption of four dinner meals and meager fluid intake in the past six days does not provide sufficient calories to ameliorate the effects of his current strike.   *Id*. ¶25.

9.      Additionally, since arriving at Krome, Respondent has, with very limited exception, refused to be weighed, permit physical examination, or allow blood draws for laboratory testing. Diaz Decl., ¶¶ 6; 8-9.

10.     A psychiatrist at Krome has evaluated Respondent and found no evidence of a

psychiatric condition causing him to refuse food or hydration; rather, he appears to be operating under his own free will.   Diaz Decl. at ¶ 13.[1]

11.   Respondent has been counseled on the adverse health consequences of his continued hunger strike.   *Id.* at ¶¶  11, 14; Parra Decl., at ¶ 7.   Medical staff have repeatedly tried to persuade him to eat food and obtain adequate hydration, to no avail.   Diaz Decl., at ¶¶  14, 21.

12.   Respondent has been informed that relief from a court may be necessary to preserve his life and health if he continues to deprive himself of necessary nutrients and hydration, and that such relief may include involuntary hydration and feeding procedures.   *Id*. ¶ 14.

13.   On January 14, 2025, Respondent allowed medical staff to weigh him, at which time his weight was recorded as 137.8 lbs, reflecting a loss of 18.2lbs or 11.67% of his initial body weight.   *Id*. ¶ 8.   Respondent has otherwise refused to be weighed or permit blood draws for laboratory testing.   *Id*. ¶ 9.

14.   On January 15, 2025, Mr. Shand allowed a partial physical examination.   His hand grip and chest auscultation were normal.   *Id*. ¶ 9.   Respondent has otherwise refused to be physically examined since arriving at Krome, thereby preventing any objective evaluation of his clinical and metabolic status.   *Id*. ¶ 15.

15.   Because he refuses to submit to laboratory testing, there is no laboratory data available to monitor renal function or electrolyte disturbances which could be potentially fatal. *Id*. ¶ 15.

### III.   COURT INTERVENTION IS NECESSARY

16.   Despite Petitioner's best efforts, Respondent has reached the point where he

---

[1] This statement is not intended to convey that Respondent has no mental health issues, generally. Rather, this statement is intended only to convey that, based on clinical evaluation, no discernable psychiatric condition is causing Respondent to refuse food, proper hydration, or medical care.

requires immediate medical intervention to prevent further deterioration and serious medical complications, including potential injury, organ failure, or death. Diaz Decl., ¶¶ 15-25.

17. Respondent's condition is expected to decline as his hunger strike continues. Between the 15th and 30th day of a hunger strike, a patient may suffer neurological symptoms which are severe enough to warrant hospitalization. *Id*. ¶ 19. Respondent is already exhibiting signs and symptoms of orthostatic blood pressure changes which are caused by dehydration and may cause dizziness. In addition, Respondent has had a decreased urinary output, which is indicative of both dehydration and hypotension. *Id*.

18. Respondent's consumption of four dinner meals and meager fluid intake in the past six days does not provide sufficient calories to ameliorate the effects of his current strike. *Id*. ¶ 25

19. If fasting continues, it will undoubtedly result in permanent damage to his internal organs and has the potential to become life threatening. *Id*. ¶ 23. Metabolic imbalance, if left untreated, will cause fatal arrhythmias and/or cardiac arrest. *Id*.

20. It is medically necessary at this time to feed and hydrate Respondent through a nasogastric tube and/or intravenous line to provide him the nutrition and hydration he needs. *Id*. ¶¶ 23.

21. Because Respondent refuses to submit to laboratory testing, there is no laboratory data available to monitor renal function or electrolyte disturbances which could be potentially fatal. *Id*. ¶ 15. Due to Respondent's lack of cooperation with basic medical assessments, involuntary physical examinations, periodic laboratory tests (blood and urine), daily vital signs with weight, are also medically necessary to assess, monitor, and manage Respondent's hunger strike. *Id*. ¶¶ 12; 15-16; 24.

22. As Respondent's custodian, ICE has an obligation to preserve his health while he

is in ICE custody.   *See* attached Memorandum of Law.

23.      The decline in Respondent's health and well-being brought on by his hunger strike poses a serious threat to the security and good order of the Krome detention center.   Parra Decl., ¶ 9-10.

24.      In order to preserve the life of the Respondent, Petitioner needs to perform involuntary feedings and hydration, blood draws and all necessary physical examinations to preserve and sustain the life of Respondent.   Diaz Decl., ¶ 25.

25.      To ensure both Respondent and medical staffs' safety, should Respondent refuse to cooperate, medical soft restraints will be required to immobilize Respondent and prevent unnecessary injury to both the Respondent and medical staff.   *Id.* at ¶ 28.

26.      Respondent will require a gradual and evidence-based refeeding process to avoid any possible adverse medical aftereffects; accordingly, ICE requests that any order granting the relief requested in this Petition should remain in effect until such time that Respondent's food and water consumption is voluntary, continuous, and sufficient as determined by the medical staff at ICE or Larkin, in their clinical judgment and in consideration of objective data, including but not limited to Respondent's lab results and weight gain, or, alternatively, for at least 60 days.

**WHEREFORE**, Petitioner prays the Court:

a.      Find that an emergency situation exists, requiring immediate action;

b.      Enter an order authorizing ICE, through competent medical authority, including Larkin Community Hospital in Miami, Florida (Larkin), to involuntarily administer hydration and/or nutrients to Respondent, by means of an intravenous line and/or nasogastric tube.

c.      Enter an order authorizing ICE, through competent medical authority, including Larkin, to perform involuntary laboratory tests (blood and urine) and all medically necessary

5

physical examinations as determined by the medical staff at ICE or Larkin, in their clinical judgment and in consideration of objective data to monitor and assess his condition.

        d.      Enter an order authorizing ICE, through competent medical authority, including Larkin, to restrain Respondent with medical soft restraints *if he resists or asserts that he intends to resist* the administration of nutrients and hydration and/or laboratory blood draws;

        e.      Permit the order, in the form attached hereto, to remain in place until such time that Respondent's food and water consumption is voluntary, continuous, and sufficient as determined by the medical staff at ICE or Larkin, in their clinical judgment and in consideration of objective data, including but not limited to Respondent's lab results and weight gain; and

        f.      Enter such further relief as the Court deems appropriate under the circumstances.[2]

Dated:      January 16, 2025

                            Respectfully submitted,

                            MARKENZY LAPOINTE
                            UNITED STATES ATTORNEY

                  By: */s Miriam L. Alinikoff*
                            **Miriam L. Alinikoff**
                            Assistant United States Attorney
                            Bar No.: A5502701
                            Office of the United States Attorney
                            99 NE 4th Street, Third Floor
                            Miami, Florida 33132
                            Tel.: 305-961-9331
                            Email: Miriam.Alinikoff@usdoj.gov
                            *Counsel for Petitioner*

---

[2] Although there is persuasive district precedent (discussed in the attached memorandum of law) for the entry of fulsome relief on an ex parte basis, should the Court desire to hold a hearing, Petitioner's counsel respectfully requests that the Court enter an ex parte order of limited duration allowing Respondent to intervene medically as soon as possible to prevent further complications or death. Counsel also requests that any scheduled hearing take place remotely, as Respondent is not currently (and will likely not be in the near future) in a medically stable state that would allow him to be transported to downtown Miami.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing (with all attachments) was hand-delivered on this 16th day of January, 2025, to Christopher Calmore Shand, Krome Service Processing Center, 18201 S.W. 12th Street, Miami, Florida 33194, where he is legally detained.

*/s Miriam L. Alinikoff*
**Miriam L. Alinikoff**
Assistant U.S. Attorney